519 So.2d 303 (1988)
William Curtis TAYLOR, Appellant,
v.
TOWN OF ARCADIA, et al., Appellees.
No. 19215-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1988.
Rehearing Denied February 18, 1988.
Writ Denied April 7, 1988.
*304 Culpepper, Teat, Caldwell & Avery by Bobby L. Culpepper, Jonesboro, for appellant.
Theus, Grisham, Davis & Leigh by Charles H. Heck, Monroe, for Randy Wright and Dale Halverson.
Mayer, Smith & Roberts by David F. Butterfield, Shreveport, for St. Paul Fire & Marine Ins. Co.
Davenport, Files & Kelly by Mike C. Sanders, Monroe, for Insured Lloyds.
William J. Guste, Jr., Atty. Gen. by T. Michael Landrum, Baton Rouge, for State of La. and Milton Bonaventure.
Hayes, Harkey, Smith and Cascio by Haynes Harkey, Monroe, for Town of Arcadia.
Before JASPER E. JONES, FRED W. JONES, Jr. and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
A former municipal employee filed suit for damages for defamation and malicious prosecution against two town councilmen, the town and its insurer, the state, and an investigator for the attorney general. A claim was also asserted against the town for reimbursement for legal expenses. From a judgment in favor of the defendants, plaintiff appealed. For the reasons set forth, we affirm.
Wright and Halverson became Arcadia town councilmen in 1982. After assuming office they noticed an unusually large number of truck tires being purchased for town vehicles from one vendor. Following unsuccessful attempts to obtain an explanation from the mayor or action from the town council, and observing a continuance of the purchases, in February 1983 Wright and Halverson contacted the Bienville Parish Sheriff's office and advised it of the suspicious activity.
With the assistance of the two councilmen, Deputy Sheriff Raley conducted an investigation over a period of several months. Tires on town vehicles were marked and photographed and tire purchases were monitored to see if new tires were actually being placed on town vehicles. Despite invoices showing tire purchases, no *305 new tires were ever observed on the town vehicles.
During this time Taylor was employed by Arcadia as superintendent of the water and sewer department. He had no authority to purchase tires for the town trucks but did direct their routes. He could also sign invoices, as did other municipal employees, for receipt of tires.
In May 1983 the results of Deputy Raley's investigation were presented to the District Attorney, who requested assistance from the office of the state Attorney General. The ensuing investigation was directed by Bonaventure, who found that over a 14 month period some 42 tires were purchased by the town for a limited number of vehicles.
A grand jury was convoked. Wright and Halverson were included among those summoned as witnesses. On September 1, 1983 the mayor, the vendor of the tires, and Taylor were indicted for felony theft. Taylor retained an attorney to represent him. The indictment against Taylor was dismissed in May 1984. In the meantime Taylor had resigned from his employment with the town. After dismissal of the indictment as to him, Taylor requested reimbursement from the town for his legal expenses but the town council voted unanimously to deny the request.
In this suit Taylor alleged that Wright and Halverson, acting as town officials, defamed him by telling the investigators and the grand jury that Taylor was either involved in the theft or knew something about it. It was further asserted that Bonaventure defamed Taylor by making a public statement that Taylor would not care for the food at Angola. Taylor also contended that Wright and Halverson initiated the investigation and continued to "push" it with the District Attorney and the Attorney General.
At the trial, town councilmen Rhodes, Baker, Kelly and Butler denied ever hearing Wright or Halverson mention plaintiff's name in connection with the tire purchases. Deputy Raley and Bonaventure testified to the same effect. Wright and Halverson testified that they never suspected or accused plaintiff of any wrongdoing.
On the other hand, a local newspaper reporter, Pye, said Wright and Halverson indicated to him that plaintiff knew something he wasn't telling. The town clerk, Watson, said Bonaventure indicated to her on several occasions, both before and after the indictment, that he thought plaintiff and the mayor were guilty. Bonaventure admitted making the remark that "the food was not any good up the river" in the presence of plaintiff and several others.
In written reasons for judgment the trial judge found that, although plaintiff had suffered harm, no one was at fault in causing that harmit was just a matter of being in the wrong place at the wrong time. The court explained:
"Wright and Halverson did what any public official (or private citizen) should do, i.e. report suspected wrongdoing to the proper authorities. Bonaventure conducted his investigation in a forthright manner. The Town, as such, never asked for nor participated in the investigation."
Defamation
The essential elements of a defamation action are 1) defamatory words; 2) publicationcommunication to someone other than the one defamed; 3) falsity; 4) malice, actual or implied; and 5) resulting injury. Cangelosi v. Schwegmann Bros., 390 So.2d 196 (La.1980); Young Oil Co. of La., Inc. v. Durbin, 412 So.2d 620 (La.App. 2d Cir. 1982).
Defenses to a defamation action include truth, justification and privilege. Privileges are either absolute or conditional. A conditional or qualified privilege is applicable to communications made in good faith, on a subject matter in which the communicator has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty. Elmer v. Coplin, 485 So.2d 171 (La. App. 2d Cir.1986), writ denied, 489 So.2d 246 (La.1986).
*306 A statement is defamatory when it tends to expose a person to contempt, hatred, ridicule or obloquy or which causes a person to be shunned or avoided; or which has a tendency to deprive or injure him in his occupation. It includes almost any language which upon its face has a natural tendency to injure the person's reputation, either generally or with respect to his occupation. The intent and meaning of an alleged defamatory statement must be gathered not only from the words alleged to be defamatory but from the context as well. The true meaning must be ascertained from a consideration of all parts of the statement as well as the circumstances of its publication. The test is the effect it is fairly calculated to produce and the impression it would naturally engender in the minds of the average persons by whom it is heard. Autry v. Woodall, 493 So.2d 716 (La.App. 2d Cir.1986).
Words which impute a crime to another are defamatory per se, and malice is presumed. It is not necessary that the offense be charged in express terms or with technical accuracy. If the statement taken in its natural and ordinary signification fairly imports the commission of a crime, it is sufficient. Martin v. Markley, 202 La. 291, 11 So.2d 593 (1942). See also Madison v. Bolton, 234 La. 997, 102 So.2d 433 (1958), holding that a mere insinuation is as actionable as a positive assertion if the meaning is plain and the words taken in their ordinary usage convey a degrading imputation, no matter how indirectly.
The record is devoid of evidence that either Wright or Halverson made defamatory statements concerning plaintiff. Therefore, the trial judge did not err in his ruling with reference to these defendants on the defamation issue. The claim against Bonaventure requires further consideration.
The statement, "... you are going to like the food in Angola" clearly qualifies as defamatory per se, (i.e. defamatory by its very nature, without the aid of extrinsic proof) and the law presumes it was made with malice. Therefore, plaintiff successfully established four of the five essential elements for a cause of action in defamation with respect to this statement. However, the final element, resulting injury, was not established. In order to establish a causal relationship between the harm suffered and Bonaventure's conduct, plaintiff was required to show that he probably would not have suffered the injuries he complained of but for the conduct. See Wattigny v. Lambert, 408 So.2d 1126 (La. App. 3rd Cir.1981), writ denied, 410 So.2d 760 (La.1981); U.S. Cert. denied in 457 U.S. 1132, 102 S.Ct. 2957, 73 L.Ed.2d 1349 (1982). Plaintiff made no such showing. On the contrary, it is apparent that due to the involved investigation of this matter, plaintiff's indictment and the resulting stigma, publicity and defense related expenses, he would have suffered these injuries even if the statement by Bonaventure had not been made. Moreover, the statement cannot be considered a "substantial factor" in causing the harm complained of. Thus plaintiff has failed to carry his burden of proof relative to cause-in-fact. The trial court did not err in absolving Bonaventure and the state of liability for defamation. Malicious Prosecution
The elements of an action for malicious prosecution are: 1) commencement or continuance or an original criminal or civil judicial proceeding; 2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; 3) its bona fide termination in favor of the present plaintiff; 4) the absence of probable cause for such proceeding; 5) the presence of malice therein; and, 6) damage conforming to legal standards resulting to plaintiff. Johnson v. Pearce, 313 So.2d 812 (La.1975); Jones v. Wesley, 424 So.2d 1109 (La.App. 1st Cir.1982).
Plaintiff has not established the elements of this tort with regard to these defendants. As mentioned, the trial judge concluded the town had no part in the investigation, and that Halverson and Wright acted reasonably.
The record reveals that Wright and Halverson helped uncover facts which would lead a reasonable person to suspect criminal activity. Plaintiff was a key town employee. The trial judge found that he exercised some control over the garbage department, and many witnesses (including plaintiff) testified that he was in a position *307 to observe daily occurrences in the town's garage. Probable cause thus clearly existed for Wright and Halverson to present evidence of plaintiff's possible involvement in this situation to the authorities and for the Attorney General to present the case to a grand jury.
Furthermore, these facts also preclude the conclusion that defendants acted with malice. Malice exists where a charge is made with knowledge that it is false or with reckless disregard for whether it is false or not. One is not guilty of malice for inaccurately reporting criminal conduct when there is no intent to mislead. O'Conner v. Hammond Police Dept., 439 So.2d 558 (La.App. 1st Cir.1983).
We agree with the trial judge that plaintiff did not prove defendants maliciously prosecuted him.
Reimbursement of Legal Expenses
The trial judge did not commit error in rejecting this claim against the town. A court may not substitute its judgment for that of an elected governing body vested with discretion unless it is clearly shown that the action of such body is beyond its authority or is arbitrary, unreasonable or fraudulent. State v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153 (1944). See also Richland Parish Bus Drivers Assoc. v. Richland Parish School Board, 420 So.2d 696 (La.App. 2d Cir.1982).
The Town of Arcadia had discretion to either pay or refuse to pay plaintiff's legal expenses. We have no authority to reverse its refusal to pay.
Conclusion
For the reasons set forth, the judgment of the trial court is affirmed, at plaintiff's cost.

ON APPLICATION FOR REHEARING
Before MARVIN, FRED W. JONES, SEXTON, JASPER E. JONES and NORRIS, JJ.
Rehearing denied.