698 So.2d 749 (1997)
Sandra K. BELL, Plaintiff-Appellant,
v.
Cindy ROGERS, Delores Wood, and St. Francis Medical Center, Defendants-Appellees.
No. 29757-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1997.
*752 Theus, Grisham, Davis & Leigh by Paul D. Spillers, Monroe, for Plaintiff-Appellant.
Kullman, Inman, Bee, Downing & Banta by Thomas P. Hubert, Cornelius R. Heusel, Richard A. Hammond, New Orleans, Shafto & Ashbrook by Stephen L. Harrison, Monroe, for Defendants-Appellees.
Before MARVIN, C.J., and STEWART and PEATROSS, JJ.
STEWART, Judge.
Sandra Bell appeals the judgment of the trial court granting defendants' motion for summary judgment on Bell's claim for defamation and granting St. Francis Medical Center's motion for summary judgment on the hospital's claim for reimbursement in the amount of $11,167.18 for overpayment to Bell during 1993 and 1994. For the following reasons, we affirm the judgment of the trial court.

FACTS
Sandra Bell, a long-time registered nurse employed by St. Francis Medical Center in Monroe, Louisiana, worked in the neonatal intensive care unit providing care to critically ill infants and in the home health department providing "transport services" among hospitals for critically ill patients. Bell worked irregular hours, weekends, and holidays. Her income varied due to overtime, holiday, and incentive pay for medical transport services. Bell's earnings were directly deposited into her checking account.
In May, 1994, the hospital administration determined that Bell had been overpaid due to an error by the payroll department. On May 10, 1994, Bell met with Cindy Rogers, administrator of the Home Health Department and coordinator of the investigation of the overpayment to Bell, Bill Hightower, director of Human Resources, Delores Wood, director of NICU, and Wanda Chambless, director of Home Health Department. At that meeting, Rogers discussed with Bell a written report which cited Bell with "misappropriate use of property" belonging to St. Francis Medical Center and detailed the pay periods wherein Bell was overpaid. Bell admitted in writing that she knew the transport checks were larger than normal but that she was unable to compute check amounts without the check stubs. Apparently, the hospital concluded that Bell had misappropriated hospital funds because she failed to notice the mistakes and return the overpayment to the hospital. As a result of that meeting, Bell was suspended for two days and was requested to make arrangements to repay the hospital within two weeks.
Bell filed a lawsuit against St. Francis Medical Center, Rogers, and Wood claiming that defendants had defamed Bell. In her petition, Bell alleged that the written report prepared by the hospital contained "libelous, slanderous and defamatory statements which were clearly untrue." Bell also alleged that Rogers and Wood communicated by discussions and/or written documents "the accusations of misappropriation." Further, Bell alleged that Rogers and Wood communicated the information to Chambless and "may well have communicated" the information contained *753 in the report to hospital personnel or third parties.
St. Francis Medical Center then filed a reconventional demand seeking a return of the alleged overpayment in the amount of $11,167.18, paid over a period of months in 1993 and 1994. The hospital admits that a data entry clerk in the payroll department made the error and does not allege that the overpayment was attributable to any action by Bell. Bell denies that she was overpaid.
Defendants filed a motion for summary judgment on Bell's claim for defamation and attached a copy of the written report, affidavits by Becky Wylie, custodian of payroll records, and Debra Lemoine, an employee of the hospital, portions of depositions of Rogers, Wood, Chambless and Bell, and copies of payroll checks paid to Bell and other payroll records. St. Francis Medical Center filed a motion for summary judgment on their claim for a refund of the amount overpaid to Bell. Bell filed opposition to both motions and attached her own affidavit.
Both motions were heard on December 3, 1996. At that hearing, the trial court stated that recent amendments to La. C.C.P. art. 966 authorized the court to look to the merits of the case, weigh evidence, determine credibility, and otherwise "try the case" without trial on the merits. In granting the motions for summary judgment, the trial court did not render written reasons for judgment nor were the trial court's oral reasons for judgment recorded for transcription.
Bell appeals and assigns two errors.

SUMMARY JUDGMENT
Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991), directs that an appellate court conduct a de novo review of the documents supporting and opposing a motion for summary judgment under the same criteria which governs the trial court's consideration of whether summary judgment is appropriate pursuant to La. C.C.P. art. 966.

DEFAMATION
A defamation plaintiff bears an extremely heavy burden to withstand a motion for summary judgment. Sassone v. Elder, 626 So.2d 345 (La.1993); Wright v. Dollar General Corp., 602 So.2d 772 (La.App. 2d Cir.1992), writ denied; Zellinger v. Amalgamated Clothing, 28,127 (La.App.2d Cir. 4/3/96), 683 So.2d 726. Notwithstanding the general preference for trial on the merits when issues of material fact are asserted in other type cases, defamation claims are inordinately susceptible to summary adjudication due to the constitutional considerations involved in defamation actions, regardless of whether the defendant is or is not a member of the news media. Kosmitis v. Bailey, 28,585 (La.App.2d Cir. 12/20/96), 685 So.2d 1177.
In addition to screening a case for the mere presence or absence of genuine issues of material fact, summary judgment motions on defamation claims also test the evidentiary strength of the plaintiff's case to determine whether the plaintiff will likely be able to prove his or her factual assertions with convincing clarity at trial. Wright, 602 So.2d at 774; Sassone, 626 So.2d at 351-52. Absent such evidence, no genuine issue of material fact exists. Therefore, summary judgment should be granted. Sassone, 626 So.2d at 351; Zellinger, 28,127 at p. 2, 682 So.2d at 730.
The five essential elements of defamation are (1) defamatory words; (2) publication to a person other than the one defamed; (3) falsity; (4) malice; and (5) resulting injury. Brannan v. Wyeth Laboratories, Inc., 526 So.2d 1101, 1105 (La. 1988); Kosmitis v. Bailey, 28,585 at p. 2, 685 So.2d at 1179. The cause of action fails if even one of these elements is lacking. Roberts v. Louisiana Bank & Trust Co., 550 So.2d 809 (La.App. 2d Cir.1989), writ denied. See also Sassone, 626 So.2d at 352; Taylor v. Town of Arcadia, 519 So.2d 303, 306 (La.App. 2d Cir.1988), writ denied.
When defendant's motion for summary judgment is supported by documents facially adequate to refute the essential elements of a particular defamation claim, plaintiff must then affirmatively produce evidence of sufficient quality and quantity to demonstrate that she likely will be able to bear her burden of proof at trial. Otherwise, the *754 claim will not survive summary judgment. Sassone v. Elder, 626 So.2d at 351. In the defamation setting, a plaintiff opposing summary judgment bears a burden of proof more onerous than plaintiffs in other actions, and must demonstrate that she can produce sufficient evidence at trial to prove the elements of the case with convincing clarity. Wright v. Dollar General Corp., 602 So.2d at 774.
Defamation is defined as words which tend to harm the reputation of another so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her. Sassone v. Elder, 626 So.2d at 352. If a statement "tends to expose the plaintiff to contempt, hatred, ridicule or obloquy, or causes her to be shunned or avoided, or has a tendency to deprive her of the benefits of public confidence or injure her in her occupation," the statement is defamatory. Martin v. Lincoln General Hospital, 588 So.2d 1329, 1332-33 (La.App. 2d Cir.1991). The words must be communicated or "published" to someone other than the plaintiff to be actionable. Taylor v. Town of Arcadia, 519 So.2d at 305.
"Whether a particular statement is objectively capable of having a defamatory meaning is a legal issue to be decided by the court, considering the statement as a whole, the context in which it was made, and the effect it is reasonably intended to produce in the mind of the average listener." Kosmitis v. Bailey, 28,585 at p. 3, 685 So.2d at 1180; Sassone v. Elder, 626 So.2d at 352; Taylor v. Town of Arcadia, 519 So.2d at 306. "If that issue is resolved in the plaintiff's favor, the actual recipient's subjective understanding or perception becomes a factual issue for the jury." Kosmitis v. Bailey, 28,585 at p. 3-4, 685 So.2d at 1180; Sassone v. Elder, 626 So.2d at 352. However, the plaintiff's claim is not actionable and may be dismissed by summary judgment if the court determines that the words at issue are not objectively capable of having a defamatory meaning regardless of the arguable presence or evidentiary strength of the remaining elements of the claim. Id.
Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, are considered defamatory on their face, or defamatory per se. Elmer v. Coplin, 485 So.2d 171 (La.App. 2d Cir.1986), writ denied. When the plaintiff proves publication of words which are defamatory per se, the elements of falsity and malice are presumed, but may be rebutted by the defendant. Id.; Wright v. Dollar General Corp., 602 So.2d at 775. The element of injury may also be presumed or inferred from the publication of words which are defamatory per se. Garrett v. Kneass, 482 So.2d 876, 880 (La.App. 2d Cir.1986), writ denied; Trahan v. Ritterman, 368 So.2d 181, 185 (La.App. 1st Cir.1979); Lucas v. Ludwig, 265 So.2d 245, 248 n. 2, (La.App. 4th Cir.1972).
When the words at issue are not defamatory per se, the plaintiff must prove, in addition to defamatory meaning and publication, the elements of falsity, malice and injury. Malice, or the lack of a reasonable belief in the truth of the statement, may sometimes be inferred or implied from the circumstances surrounding the communication. See, for example, Lemeshewsky v. Dumaine, 464 So.2d 973 (La.App. 4th Cir.1985). In cases involving statements made about a public figure or a matter of public concern, however, the plaintiff must prove actual malice, that is, that the defendant either knew the statement was false or acted with reckless disregard for the truth. See generally Romero v. Thomson Newspapers, 94-1105 (La.1/17/95), 648 So.2d 866, U.S. cert. denied.
The element of injury resulting from a defamatory statement may include nonpecuniary or general damages such as injury to reputation, personal humiliation, embarrassment and mental anguish, even when no special damage such as loss of income is claimed. Lemeshewsky v. Dumaine, supra; Rennier v. State Dept. of Public Safety, 428 So.2d 1261 (La.App. 3d Cir.1983). Further, even when no special damages are claimed and the defamatory statements have had little or no adverse effect on the plaintiff's reputation, damages are recoverable for the plaintiff's own embarrassment, humiliation, *755 anxiety or hurt feelings resulting from the defamation. Time, Inc. v. Firestone, 424 U.S. 448, 460, 96 S.Ct. 958, 968, 47 L.Ed.2d 154 (1976); Freeman v. Cooper, 390 So.2d 1355, 1360 (La.App. 4th Cir.1980), affirmed, 414 So.2d 355 (La.1982); Garrett v. Kneass, supra, 482 So.2d at 882; Trahan v. Ritterman, 368 So.2d at 185-86; Rennier v. State Dept. of Public Safety, 428 So.2d at 1264; Lege v. White, 619 So.2d 190 (La.App. 3d Cir.1993).
Regardless of the type of injury asserted, however, the plaintiff must present competent evidence of the injuries suffered. Id. The plaintiff must also show a "but for" causal connection between the defendant's conduct and the injuries, that is, that the defamatory statements were a substantial factor in causing the harm. Taylor v. Town of Arcadia, 519 So.2d at 306.
Even when the plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded if the defendant shows either that the statement was true, or that it was protected by a privilege, absolute or qualified. Martin v. Lincoln General Hospital, 588 So.2d at 1333.
Truth is an absolute defense to an action for defamation. Martin v. Lincoln General Hospital, 588 So.2d at 1333. Privilege, either absolute or conditional, is also a defense. A conditional or qualified privilege exists if the communication was made in good faith on a subject matter in which the speaker has an interest or duty and made to a person with a corresponding interest or duty. Martin v. Lincoln General Hospital, 588 So.2d at 1333; Toomer v. Breaux, 146 So.2d 723 (La.App. 3d Cir.1962). "Communications between appropriate persons within an employer's walls, concerning allegations of conduct by an employee that bears on the employer's interest, are subject to the qualified privilege if made in good faith." Martin v. Lincoln General Hospital, 588 So.2d at 1333.

ISSUES
Assignment of Error # 1: The trial court erred by granting defendants' motion for summary judgment with respect to Bell's claim for defamation.
Bell's allegations arise out of the investigation and preparation of the written report and the counseling session attended by Rogers, Wood, Chambless and Hightower. Although Bell's petition additionally alleges that Rogers and Wood "may well have communicated" information about the situation "to other hospital personnel" and that the information was communicated to "various nursing staff," Bell has submitted her own affidavit but no other evidence to support her allegations and her opposition to the motion for summary judgment. The affidavits, depositions, and copies of hospital reports and records submitted in support of defendants' motion for summary judgment are facially adequate to refute Bell's defamation claims. To survive summary judgment, Bell must affirmatively produce evidence of sufficient quality and quantity to demonstrate the she likely will be able to prove the elements of her claims with convincing clarity at trial. Kosmitis v. Bailey, supra; Sassone v. Elder, supra; Wright v. Dollar General Corp., supra.
The written "Employee Counseling Report", which Bell alleges to contain the defamatory statement, was prepared by Rogers and discussed at the May 10, 1994 meeting between Bell and Rogers in the presence of Wood, Chambless, and Hightower. The written report indicates that Bell violated a hospital rule prohibiting "misappropriate use of property belonging to SFMC." Bell alleges that the hospital, Rogers and Wood "published" the defamatory statement by filing the report in the archives of the hospital and by discussing the contents of the report at the meeting on May 10, 1994. However, neither in the petition nor in her affidavit does Bell specify what defamatory statements were said at the meeting or by whom any alleged defamatory statements were made. Although Bell attests that "numerous individuals having no interest whatsoever" were present at the meeting, Bell has not identified the individuals. Rogers, Wood and Chambless all testified, by deposition, that Bell was not accused of taking the overpayments with an intent to steal from the hospital nor was she called a "thief." They also testified that the only persons present at the *756 meeting were Bell, Rogers, Wood, Chambless and Hightower.
Whether the statement "misappropriate use of property" is objectively capable of having a defamatory meaning is a legal issue to be determined by "considering the statement as a whole, the context in which it was made, and the effect it is reasonably intended to produce in the mind of the average listener." Kosmitis v. Bailey, 28,585 at p. 3, 685 So.2d at 1180. We conclude that the bare assertion "misappropriate use of property", considered within the context of having been expressed in an "Employee Counseling Report" in the routine course of business, cannot be regarded as defamatory in meaning or in its intended effect. Further, Bell has failed to make any evidentiary showing regarding her claim that defamatory statements were made at the meeting. Without any factual specificity regarding the content of the defamatory statements and the context in which such statements may have been made, we find that Bell has failed to make the requisite showing of the evidentiary strength of her claim regarding alleged defamatory statements made at the meeting.
Additionally, "statements between employees, made within the course and scope of their employment, are not statements communicated or publicized to third persons so as to constitute a publication." Marshall v. Circle K Corp., 715 F.Supp. 1341, 1343 (M.D.La.1989), affirmed, 896 F.2d 550 (5th Cir.1990). See also, Cangelosi v. Schwegmann Bros. Giant Supermarkets, 390 So.2d 196 (La.1980). Clearly, Rogers, Wood, Chambless and Hightower were within the course and scope of their employment in investigating the incident, preparing the written report and discussing the matter with Bell at the meeting. Chambless, as director of the Home Health Department, had knowledge and information regarding the transports that Bell had made and was told of the overpayments within the course and scope of her employment at St. Francis Medical Center. Rogers, Wood and Chambless testified that no other nurses, hospital personnel or third persons were present at the meeting. Although, in her affidavit, Bell attested that her co-workers were present, Bell has made no evidentiary showing as to whom the allegedly defamatory statements were published. Assuming solely for purposes of discussion that the statements were objectively defamatory, we do not find that Bell has demonstrated that she can produce sufficient evidence to prove the element of publication with convincing clarity at trial.
Therefore, we conclude that Bell has not affirmatively established the evidentiary strength of facts material to her claims of defamation arising out of the written report and the May 10, 1994 meeting. In other words, Bell has not demonstrated that she has a "provable" claim. See Kosmitis v. Bailey, 28,585 at p. 12, 685 So.2d at 1184. Because we find the record lacking regarding two of the five elements, a discussion of the qualified privilege defense will be pretermitted.
In the petition, Bell further alleged that Rogers and Wood "may well have communicated" information about the overpayments to other hospital personnel and that information was communicated to "various nursing staff at St. Francis Medical Center." In her affidavit, Bell attests, in pertinent part:
Debra Lemoine represented to Affiant that she, Debra Lemoine, had knowledge of Affiant having misappropriated hospital funds, and that the source of her knowledge about the misappropriated funds was Delores Wood, the Nursing Director of that unit. Further, Debra Lemoine represented to Affiant that because of the misappropriation of funds, Affiant would not be considered for a scholarship from St. Francis Medical Center in order to attend the Georgetown University Neonatal Nurse Practitioner program.
Bell makes a general assertion that Lemoine had knowledge of the overpayment but offers no further factual specificity about the statements made by Wood. In her affidavit submitted in support of the motion for summary judgment, Lemoine attested that Wood had never discussed the payroll error with her and denied any conversation with Bell about the overpayment. Wood testified in her deposition that she had not discussed the *757 matter with other co-workers, specifically Lemoine.
Though the element of publication appears to be genuinely disputed (Bell claims Wood told Lemoine whereas Wood denies telling Lemoine and Lemoine denies any discussion about or with Bell), Bell has not made a strong evidentiary showing in this record of the other objective elements of her claim regarding Lemoine: what Wood "published" to Lemoine and whether her statements were objectively capable of having a defamatory meaning within the context in which the statements were made. Bell clearly has no personal knowledge about what, if anything, Wood said to Lemoine outside her presence. Her allegations of defamatory words were not based on her personal knowledge, were not supported by the testimony or affidavit of anyone having personal knowledge of the statements, and were denied by Wood, the source of the allegedly defamatory words, and by Lemoine, the person to whom the statements were allegedly made.
Other than Lemoine, Bell has not identified any nurses, hospital personnel or third persons to whom allegedly defamatory statements were made. Further, based on her own affidavit, Bell has no personal knowledge of what any defendant said to whom outside her presence. In her deposition, Bell admitted that her fellow employees were not aware that she had been suspended and that none of her co-workers asked her about the incident.
We conclude that Bell has not made the required demonstration of the evidentiary strength of her claims as to the defamatory statements made by defendants to anyone. Bell has not shown that she can produce sufficient evidence at trial to prove the elements of her claims with convincing clarity.

RECONVENTIONAL DEMAND
Assignment of Error # 2: The trial court erred by granting St. Francis Medical Center's motion for summary judgment against Ms. Bell with respect to the hospital's claim for repayment in the amount of $11,167.18.
Reviewing the record de novo, we conclude that no genuine issue of material fact exists regarding St. Francis Medical Center's claim to recover overpayments to Bell in the amount of $11,167.18.
La. C.C. art. 2299 provides that one who has received payment not owed him is obligated to return the payment to the person from whom it was received. See also Shatoska v. International Grain Transfer, Inc., 634 So.2d 897 (La.App. 1st Cir.1993). In support of the motion for summary judgment, St. Francis Medical Center submitted copies of payroll data input sheets and checks payable to Bell for the period between January 14, 1993 and August 25, 1994 and a computation of the amount of the overpayment to Bell.
Although Bell states in her affidavit that she earned all amounts that she was paid by the hospital, Bell testifies by deposition that she agreed that the hospital made a mistake in computing her earnings. Bell offered no evidence to refute the documentary evidence submitted by St. Francis Medical Center.
We conclude that no genuine issue exists regarding the fact that the hospital overpaid Bell, the fact that Bell is bound to return the overpayment, and the amount of the overpayment.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. Costs are assessed to Bell.
AFFIRMED.