# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-1248

**GREGORY R. AYMOND**

**VERSUS**

**RICH DUPREE**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
PINEVILLE CITY COURT
PARISH OF RAPIDES, NO. 5-0153
HONORABLE ROBERT P. JACKSON, CITY COURT JUDGE AD HOC

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and James T. Genovese, Judges.

**COOKS, J., DISSENTS AND ASSIGNS WRITTEN REASONS.**

**AFFIRMED.**

Ronald J. Fiorenza
**PROVOSTY, SADLER, deLAUNAY, FIORENZA & SOBEL**
P. O. Drawer 1791
Alexandria, LA 71309-1791
Telephone: (318) 445-3631
COUNSEL FOR:
    Defendant/Appellee - Rich Dupree

Henry Howard Lemoine, Jr.
Lemoine & Wampler
607 Main Street
Pineville, LA 71360
Telephone: (318) 473-4220
COUNSEL FOR:
    Defendant/Appellee - Rich Dupree

**Gregory R. Aymond**
**P. O. Drawer 5503**
**Alexandria, LA 71307-5503**
**Telephone:  (318) 445-3618**
**(In Proper Person)**

THIBODEAUX, Chief Judge.

Gregory Aymond, the former attorney for Rapides Parish Waterworks District Number 3, filed a suit for defamation and slander against Rich Dupree, a commissioner of the water board, alleging that Dupree made false statements about him causing the board to terminate his attorney's position with the waterworks district. The commissioner filed a special Motion to Strike Pursuant to La.Code Civ.P. art. 971. The trial court granted the commissioner's motion and dismissed Aymond's claims. Aymond appeals. For the following reasons, we affirm the judgment of the trial court.

## I.

## ISSUES

We must decide:

(1) whether the trial court erred in applying La.Code Civ.P. art. 971 and in dismissing Aymond's claims pursuant to the special motion to strike;

(2) whether the trial court erred in hearing Dupree's special motion to strike more than thirty days after service of the motion;

(3) whether the trial court erred in granting the special motion to strike before hearing all arguments on Aymond's motion for discovery; and,

(4) whether the trial court denied Aymond procedural due process in granting the special motion to strike.

## II.

## FACTS AND PROCEDURAL HISTORY

The plaintiff, Gregory R. Aymond, was the attorney for Rapides Parish Waterworks District Number 3 for approximately sixteen years. The defendant, Rich Dupree, was a commissioner on the Board of Rapides Parish Waterworks District

Number 3 (hereinafter "Water Board" or "Board"). In April of 2004, Aymond was assigned the task of investigating a water district line run across the private property of Mayor Roy Hebron of the Town of Ball. The line was allegedly run without state approval, without servitudes, and at no charge to the mayor, expending approximately $5,000.00 of public funds. Aymond investigated the issue, took photographs and statements, and submitted a report to the Water Board in May 2004, resulting in a Board vote to turn the matter over to the legislative auditor, State Ethics Board, and the Rapides Parish District Attorney. The District Attorney's office subsequently informed the Water Board that it must institute a civil proceeding to recoup the public funds expended on laying the water line.

On July 13, 2004, when the employment contract of Aymond, the Water Board's attorney, came up for annual renewal, the Board voted, with a six to three majority vote, not to renew the employment contract of Aymond, thereby terminating his position as attorney for the Water Board. Aymond asserts that the defendant, Dupree, made false statements and influenced two crucial votes against Aymond, those of commissioner Thurman Kelly and of the newly-elected Board President, Otha Hailey, whose votes in the opposite direction would have resulted in Aymond keeping his position as the Water Board's attorney. However, Aymond provides details only as to events influencing the vote of Kelly.

A couple of hours after the vote on July 13, 2004, Aymond called Kelly seeking an explanation for the Board's vote against renewing Aymond's employment contract. According to Aymond, in addition to being on the Water Board together, Kelly and Dupree were City of Pineville employees. In that capacity, Dupree was Kelly's supervisor. Aymond alleges that Kelly told him on the phone that for three weeks preceding the Board's vote, Dupree had solicited Kelly's vote to terminate Aymond's contract. However, Kelly subsequently signed an affidavit stating that at

2

no time did Dupree attempt to solicit Kelly's vote. Aymond further alleges that Kelly told Dupree that he would only vote against Aymond if Dupree and Hailey first met with Aymond to discuss some of Kelly's concerns. According to Aymond, Kelly stated that Dupree called him on the way to the Water Board meeting and informed him that he had met with Aymond to discuss Kelly's concerns but that Aymond informed Dupree that Aymond "would not change." Aymond secretly taped this conversation with Kelly and planned to play the tape at the discovery hearing.

On July 13, 2004, Aymond called Dupree and secretly taped that conversation as well. Aymond alleges that during the conversation Dupree said Aymond's termination had nothing to do with his legal abilities, but rather was for failing to make the Mayor Hebron waterline investigation go quietly away. Aymond further alleges in his amending petition that on July 27, 2004, at a public meeting, Dupree announced that he had informed a local newspaper that he did not have confidence in Aymond's control of matters involving the Water Board and that Aymond's termination had nothing to do with Mayor Hebron.

Dupree asserts that during his conversation with Aymond, he told Aymond that he was not satisfied with his handling of certain assignments, nor with the manner in which Aymond had "dressed down" fellow commissioners in open meetings. Dupree also asserts that he told Aymond that there was an overall feeling among Board members that a change needed to be made to move the Board forward.

Aymond filed a suit for defamation and slander in Pineville City Court against Dupree on March 2, 2005. He alleged that Dupree's statement to Kelly regarding Aymond's refusal to change, as well as his subsequent public statement regarding the reason for Aymond's termination, were false statements and were intended to publicly discredit Aymond and to maliciously embarrass him.

3

Pineville City Court Judge J. Phillip Terrell, Jr. recused himself due to an association with Aymond, and Judge Robert P. Jackson was appointed *ad hoc* to hear the case.

In April 2005, Aymond filed a Motion to Strike certain affirmative defenses; Dupree filed a special Motion to Strike Pursuant to La.Code Civ.P. art. 971; and Aymond filed a Motion for Discovery Under Louisiana Code of Civil Procedure Article 971 and Opposition to Application of Article 971 and For Attorney Fees and For Sanctions. All three motions were set for hearing on July 12, 2005.

Dupree's special Motion to Strike Pursuant to La.Code Civ.P. art. 971 attached the affidavits of Dupree and Kelly. Dupree's affidavit states that he did express his opinion that Aymond's contract should not be renewed at the July 13, 2004 meeting; that his statements were made on matters pertaining to a public issue or an issue of public interest and were made without malice; that he had the discretion to vote for or against renewing the employment contract; that his vote and opinions were an exercise of that discretion; that any statement he made regarding the effectiveness of Aymond was true or substantially true; and that he at no time solicited Kelly to vote against Aymond's renewal as the Board's attorney. As previously indicated, Kelly's affidavit also states that at no time did Dupree attempt to solicit him to vote against renewing the annual contract of the Board's attorney, Aymond.

Aymond did not file any opposing affidavits. He alleges that he was prevented from doing so because the counsel for the Water Board and the counsel for the City of Pineville, respectively, instructed the Board members and Kelly not to talk with him.

4

III.

## LAW AND DISCUSSION

Because the granting of a special Motion to Strike Pursuant to La.Code Civ.P. art. 971 involves issues of law, we will conduct a *de novo* review of the trial court's application of the law. *See also*, *Thomas v. City of Monroe Louisiana*, 36,526 (La.App. 2 Cir. 12/18/02), 833 So.2d 1282. Trial courts have broad discretion in ruling on discovery matters that are presented during the course of litigation, including the scope of discovery. *Trahan v. State ex rel. Dept. of Health and Hospitals*, 04-743 (La.App. 3 Cir. 11/10/04), 886 So.2d 1245; *Moak v. Ill. Cent. R.R. Co.*, 93-783 (La. 1/14/94), 631 So.2d 401; *Ward v. Tenneco Oil Co.*, 564 So.2d 814 (La.App. 3 Cir. 1990). Such discretion will not be disturbed on appeal absent a clear showing of abuse. *Moak*, 631 So.2d 401.

### La.Code Civ.P. art. 971 Special Motion to Strike

Aymond contends that the trial court erred in granting Dupree's special Motion to Strike Pursuant to La.Code Civ.P. art. 971, and that Article 971 is not applicable to the claims of Aymond. Dupree asserts that his special Motion to Strike Pursuant to La.Code Civ.P. art. 971 was properly granted where the case involved the presence of protected free speech and a connection to a public issue. We agree.

The special motion to strike, governed by La.Code Civ.P. art. 971, provides in pertinent part:

> A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

5

(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

. . . .

C.  The special motion may be filed within sixty days of service of the petition, or in the court's discretion, at any later time upon terms the court deems proper.  The motion shall be noticed for hearing not more than thirty days after service unless the docket conditions of the court require a later hearing.

D.  All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this Article.  The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion.  Notwithstanding the provisions of this Paragraph, the court, on noticed motion and for good cause shown, may order that specified discovery be conducted.

. . . .

F.  As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:

(1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:

(a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.

(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.

(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.

(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

This provision was added by Acts 1999, No. 734, § 1. As stated in *Thomas v. City of Monroe Louisiana,* Section 2 of the Act provides:

> The legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, it is the intention of the legislature that the Article enacted pursuant to this Act shall be construed broadly.

*Id*. at 1286.

Hence, Article 971 was enacted by the legislature as a procedural device to be used in the early stages of litigation to screen out meritless claims brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. *Lee v. Pennington*, 02-381 (La.App. 4 Cir. 10/16/02), 830 So.2d 1037, *writ denied*, 02-2790 (La. 1/24/03), 836 So.2d 52. Accordingly, La.Code Civ.P. art. 971 provides that a cause of action against a person arising from any act in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

Thus, the moving party must first satisfy the burden of proving that the cause of action arises from an act in the exercise of his right of free speech regarding a public issue. If the mover satisfies this initial burden of proof, then the burden shifts to the plaintiff to show a probability of success on his claim. *Thomas*, 833 So.2d 1282. In the present case, Dupree's burden as the moving party is to show that the suit against him arises from an act in exercise of his right of free speech regarding a public issue. To that end, in support of his special Motion to Strike Pursuant to

La.Code Civ.P. art. 971, Dupree attached the original and amending petitions filed against him by Aymond, Dupree's answer and affidavit, and the affidavit of Kelly. All of these exhibits demonstrate that Aymond's suit against Dupree arises from Dupree's membership as a commissioner on the Board of Rapides Parish Waterworks District Number 3, and from the public issue of the Board members renewing or not renewing the employment contract of Aymond as attorney for the Board.

The affidavits of Dupree and Kelly state that they were commissioners on the Board of Rapides Parish Waterworks District Number 3 at the time of the meeting of the Board on July 13, 2004, wherein the Board decided on the non-renewal of the attorney contract of Aymond, and both state that Dupree did not solicit the vote of Kelly. Dupree's affidavit further states that he expressed his opinion that the contract should not be renewed, and that all statements made were on matters pertaining to a public issue or issue in the public interest and were related to Dupree's discretion as a commissioner of the Board to vote for or against renewing the contract. In opposition to the application of Article 971, Aymond contends that Dupree made false statements which are not the protected free speech contemplated in Article 971.

However, falsity is an element of a defamation claim to be proved by Aymond as plaintiff after the burden shifts to him. We find that Dupree has met his burden under Article 971. More specifically, in *Darden v. Smith*, 03-1144 (La.App. 3 Cir. 6/30/04), 879 So.2d 390, *writ denied*, 04-1955 (La. 11/15/04), 887 So.2d 480, we stated as follows:

> We first consider the defendants' initial burden in this case, i.e. demonstrating that the subject matter of the suit stems from an action relating to free speech and in relation to a public issue. The defendants supported their motion to strike by submitting various exhibits. Notwithstanding these exhibits, reference to the plaintiff's petition alone demonstrates that the causes of action arise

> from acts in furtherance of the defendants' right of free speech and in connection with a public issue. This is true as the statements at issue in the plaintiff's suit relate to actions of the Police Jury and its individual Police Jurors; in particular, motives allegedly underlying the Police Jury's decision making process. *Whether truthful or not*, the statements clearly relate to a "public issue" as defined by the examples of such an act provided under La.Code Civ.P. art. 971(F)(1). Thus, as commenting on such an issue is a matter in furtherance of the right of free speech guaranteed in the United States and Louisiana Constitutions, the burden of proof shifts to the plaintiff to demonstrate the probability of her success on each of the claims alleged by her petition.

*Id.* at 396-7 (emphasis added).

Because Dupree has met his burden under Article 971, the burden now shifts to Aymond.

In order to overcome Dupree's motion, Aymond is required to demonstrate a probability of success on his claim of defamation through the pleadings and opposing affidavits. Accordingly, to maintain an action for defamation, he has the burden of proving five elements: (1) defamatory words; (2) unprivileged publication; (3) falsity; (4) malice (actual or implied); and, (5) injury. *Gugliuzza v. K.C.M.C., Inc.*, 606 So.2d 790 (La.1992). Defamation involves the invasion of a person's interest in his or her reputation and good name. *City of Natchitoches v. Employers Reinsurance Corp.*, 02-147 (La.App. 3 Cir. 6/5/02), 819 So.2d 413. A defamatory communication or defamatory words are those which harm the reputation of another so as to lower him in the estimation of the community or to deter others from associating with him. *Connor v. Scroggs*, 35,521 (La.App. 2 Cir. 6/12/02), 821 So.2d 542; *See also*, *Sassone v. Elder*, 626 So.2d 345 (La.1993).

Whether a particular statement is objectively capable of having a defamatory meaning is a legal issue to be decided by the court, considering the statement as a whole, the context in which it was made, and the effect it is reasonably

intended to produce in the mind of the average listener. *Bell v. Rogers*, 29,757 (La.App. 2 Cir. 8/20/97), 698 So.2d 749. Insofar as a plaintiff is a public official, the Louisiana Supreme Court has observed that, "[a] public official plaintiff cannot recover for a defamatory statement relating to his or her official conduct, even if false, unless the public official proves actual malice by clear and convincing evidence." *Davis v. Borskey*, 94-2399, p. 10-11 (La. 9/5/95), 660 So.2d 17, 23 (quoting *Kidder v. Anderson*, 354 So.2d 1306, 1308 (La.1978), *cert. denied*, 439 U.S. 829, 99 S.Ct. 105).

In the present case, Aymond alleges that Dupree made two defamatory statements about him. One statement complained of was allegedly made in private to a third person, and one was made ostensibly in public. More specifically, Aymond alleges that Dupree told Kelly in a private telephone conversation that Aymond said he "would not change." We do not find that this statement is defamatory per se or that it rises to the level of a defamatory communication that harms the reputation of another so as to lower him in the estimation of the community or cause others not to associate with him per the definitions of defamation in *Connor* and *Sassone*. Additionally, Aymond has not shown any evidence of malice. Dupree was not in line for the position of attorney for the Board, and Aymond fails to show any malicious motivating factor on the part of Dupree. As previously indicated, Aymond did not file any opposing affidavits in support of his claim for defamation.

Moreover, Aymond has failed to show actual injury. Kelly stated in his affidavit that Dupree did not solicit his vote against Aymond. Moreover, Kelly's vote alone was not the determinative vote against renewing Aymond's contract. There were six votes against renewing the contract and only three votes in favor of renewal. While Aymond alleges that Hailey would have voted for him but for the allegedly false statement, there is no discussion, other than the bare allegation, let alone

10

evidence, that Hailey's vote would have been different. Therefore, three of the five criteria for a defamation claim are missing. Accordingly, we find that Aymond has not established a probability of success on his claims with regard to the first statement allegedly made to Kelly.

The second statement complained of was allegedly made by Dupree at a second Board meeting on July 27, 2004, approximately two weeks after the Board voted not to renew Aymond's contract. Aymond alleges that during this meeting, Dupree announced that he had informed a local newspaper that he did not have confidence in Aymond's control of matters involving the waterworks district and that Aymond's termination had nothing to do with Mayor Hebron. Aymond alleges that this statement is opposite to the statement that Dupree allegedly gave to Aymond on the telephone, and that the statement was defamatory. That is, Aymond alleges that Dupree told Aymond on the telephone right after the vote that the termination was not based upon Aymond's legal abilities but was for his failure to make the Mayor Hebron issue go quietly away. While this allegedly contradictory statement was supposed to have been made to the local press, there is no allegation against the newspaper, and no allegation that the comment was even printed. Dupree is the only named defendant in this suit.

As previously indicated, Dupree asserts that during his conversation with Aymond, he told Aymond that he was not satisfied with his handling of certain assignments, nor with the manner in which Aymond had "dressed down" fellow commissioners in open meetings. Dupree also asserts that he told Aymond that there was an overall feeling among Board members that a change needed to be made to move the Board forward.

Regardless of what Dupree told Aymond on the telephone, there simply is not evidence of a defamatory communication that harms the reputation of Aymond

11

or lowers him in the estimation of the community or prevents others from associating with him. This is particularly true where Aymond admits that Dupree made it known that he wanted Aymond to continue representing the Board in ongoing litigation. It is also possible that the public statement was the true statement and that the comments Dupree made to Aymond on the telephone were false or partially false, simply to avoid confrontation. Contextually, both the statement to Aymond and the statement to the press could be seen as true since the Mayor Hebron issue was a legal matter that, according to Aymond, the Board apparently wanted to resolve internally, without litigation, but which Aymond controlled differently, resulting in the District Attorney's involvement and advice to bring a civil suit. It is true that Aymond alleges that the civil litigation never occurred and that the water line was subsequently declared public, against legal advice, but that is not our issue. There is often more than one right way to resolve a problem.

Additionally, the public statement regarding the termination of the contract not revolving around Mayor Hebron could have been stated in a way that indicated that the termination was not over the Mayor Hebron matter alone, or over Mayor Hebron, the person. We do not know because Aymond did not attach any affidavit from the press, or newspaper clipping, or any other evidence. Moreover, Aymond apparently had offended some of the commissioners at prior meetings. The ultimate result is that six out of nine Board members wanted a change, and it is unlikely that this is a result of one singular incident.

Aymond has failed to show any malicious motivation on the part of Dupree for the statement regarding the reason for not renewing Aymond's contract. Moreover, since the statement was made approximately two weeks *after* the contract renewal was voted down, and since Dupree made it known that he wanted Aymond to continue representing the Board in ongoing litigation, Aymond has shown no

12

injury with regard to the statement to the press. We do not have a direct quote of the statement, and do not know whether it was actually printed, but surmise that the injury is only perceived by Aymond because of the alleged reference to a lack of "confidence."

Moreover, Aymond represents the comment in different ways in his petition and in his brief. He calls it a lack of confidence in his "ability" to handle the Water Board's legal matters in one argument, but his petition states that Dupree said he did not have confidence in Aymond's "control" of matters involving the waterworks district. These are two different concepts, the latter being much more palatable and less critical. Additionally, if Dupree told Aymond that the non-renewal of the contract was no reflection on his legal "abilities" and told the press that he did not have confidence in Aymond's "control" of matters involving the waterworks district, those two statements are not necessarily opposite such that one is a lie while the other is a truth. In either scenario, expressing a lack of confidence is an opinion. As to the other part of the statement regarding the announcement that the reason for not renewing the contract had nothing to do with Mayor Hebron, we fail to see how this statement was defamatory such that it lowers the public's esteem of Aymond.

In addition to concluding that the comments at the July 27, 2004 Board meeting do not rise to the level of a defamatory communication, we find that Aymond has failed to show malice and injury with his bare allegations. Since the claim cannot survive if all five elements are not present, we find that Aymond failed at the hearing to establish a probability of success on his claim, and we affirm the trial court's application and granting of the special motion to strike under La.Code Civ.P. art. 971. We now turn to the procedural issues complained of by Aymond.

13

### Hearing Date of Special Motion to Strike

Dupree filed and served his special Motion to Strike Pursuant to La.Code Civ.P. art. 971 on April 21, 2005. The trial court set the hearing for this motion on July 12, 2005. Aymond contends that the trial court erred in hearing Dupree's special motion to strike more than thirty days after service of the motion, pursuant to La.Code Civ.P. art. 971(C) (emphasis added), which provides as follows:

> C. The special motion may be filed within sixty days of service of the petition, or in the court's discretion, at any later time upon terms the court deems proper. The motion shall be noticed for hearing not more than thirty days after service *unless the docket conditions of the court require a later hearing*.

The record reveals that on May 17, 2005, the trial court set a total of three hearings on three separate motions in the case for July 12, 2005. The motions included the above special motion to strike filed by Dupree, and also a motion to strike certain defenses and a motion for discovery filed by Aymond. The record also reveals that Judge Robert P. Jackson was appointed *ad hoc* to hear the case after Judge Terrell recused himself due to a prior association with Aymond. It is therefore logical and in the interest of judicial economy that all motions to be heard by the special *ad hoc* judge should be scheduled on the docket if possible on the same date, particularly since one of the motions, the special Motion to Strike Pursuant to La.Code Civ.P. art. 971 at issue herein, could dispose of the case in its entirety.

The very purpose of the legislature's enactment of La.Code Civ.P. art. 971 in 1999 was to dispense as soon as possible with litigation that would not succeed on the merits. Had it intended to require, as it has in numerous articles, oral or written reasons from the court explaining the court's deviation from the thirty-day scheduling provision, the legislature would have included a mandate for same. There is no such mandate. The article itself allows deviation from the thirty-day scheduling

14

provision whenever docket conditions require it. This is broadly stated, and, in fact, as previously indicated, the legislative intent was that the article itself is to be broadly construed. Moreover, the defendant, Dupree, did not complain of the date set for the hearing on his special motion to strike; nor did Aymond object to the hearing date when scheduled in the court below. It is only now that the motion has been granted that Aymond complains. Accordingly, this assertion is not only without merit, but because it is being raised for the first time on appeal, it is also not properly before this court.

### Plaintiff's Motion for Discovery

Aymond asserts that the trial court erred in granting Dupree's special motion to strike without first ruling on Aymond's discovery motion. Aymond cites La.Code Civ.P. art. 971(D) (emphasis added), which provides as follows:

> D. All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this Article. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. Notwithstanding the provisions of this Paragraph, the court, on noticed motion and *for good cause shown, **may*** order that specified discovery be conducted.

It is clear from the mandatory language of the statute that discovery is to be stayed once a special motion to strike under Article 971 is filed. Again, the purpose of the statute is to put an end to the litigation unless the plaintiff can demonstrate a probability of success on his claims. The permissive portion of the statute allows further discovery at the court's discretion. However, discovery is not required for the court to make its determination regarding the merit of a plaintiff's claims of defamation. Subsection (A)(2) of Article 971 provides that, "In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based."

Dupree provided the court with his own affidavit and the affidavit of Kelly, both stating that Dupree did not solicit Kelly's vote against Aymond. Dupree's affidavit also states that any opinions he expressed regarding Aymond were on a public issue and relative to his discretion as a commissioner to vote for or against Aymond's contract renewal, and that any statement he made in connection with Aymond's effectiveness as the Board's attorney were true or substantially true and were made without malice. Aymond had already conducted some discovery and did not file any opposing affidavits. The trial court was not required to permit further discovery and did not err in ruling on Dupree's special Motion to Strike Pursuant to La.Code Civ.P. art. 971 without allowing further discovery.

## Procedural Due Process

Aymond contends more specifically that he was not permitted a hearing on his discovery motion and that the trial court denied him procedural due process[1] in deciding to grant Dupree's special Motion to Strike Pursuant to La.Code Civ.P. art. 971 before the court heard Aymond's discovery motion. We disagree. Aymond had filed a comprehensive memorandum in support of his discovery motion stating that he desired to depose Dupree, Kelly, the City of Pineville, and the Rapides Parish Waterworks District Number 3, and arguing why further discovery should be allowed. He argued at the hearing that he wanted to impeach the affidavits of Dupree and Kelly, and he attempted to call them as witnesses at the hearing. Aymond put this in the form of a motion, and the trial court denied his motion.

[1]After Dupree argued that Aymond failed to allege constitutional violations of due process in the trial court, Aymond stated in his reply brief that in arguing a denial of due process, he was not arguing the constitutionality of La.Code Civ.P. art. 971. We would just note that our jurisprudence has determined that no constitutional flaw exists in the construction of Article 971. *See Lee*, 830 So.2d 1037.

16

Dupree's attorneys argued that La.Code Civ.P. art. 971 called for a determination based upon pleadings and affidavits, not live testimony, indicating that the purpose of the special motion to strike is to avoid a full blown trial. Specifically, Article 971(A)(2) provides, "In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." La.Code Civ.P. art 971(A)(2).

The trial court took time out to examine the language in the statute again in court and subsequently did not allow Aymond to call live witnesses but did allow him to proffer what he proposed to introduce had he been allowed to call Dupree and Kelly as witnesses. Aymond argued that Kelly would testify that Dupree told him that Aymond said he would not change, and that was the reason that Kelly voted against Aymond. The attorney for Dupree objected stating that this is not what Kelly's testimony would be. Aymond was then allowed to proffer that if called, Dupree's testimony would be that Dupree informed Aymond that one of the reasons Aymond was terminated was because of the manner in which he handled the Mayor Hebron matter and not because of his legal abilities. In both instances, Aymond indicated that Kelly and Dupree would refute their affidavits rather than refute the statements allegedly made to Aymond.

The trial court apparently did not believe that calling these men as witnesses or allowing further discovery would result in a different outcome. As previously indicated, a trial court's decisions regarding discovery are not to be disturbed absent an abuse of discretion. In this case, the special motion to strike is to be granted based upon the pleadings and affidavits, and this is what the trial court did.

We again turn to the permissive language in La.Code Civ.P. art. 971(D) which mandates that discovery be stayed once the special motion to strike is filed but

allows the judge the discretion of permitting further discovery. Again, the pertinent provision of Article 971 (emphasis added) states:

> D. All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this Article. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. Notwithstanding the provisions of this Paragraph, the court, *on noticed motion* and *for good cause shown, **may*** order that specified discovery be conducted.

Because Aymond was allowed to file a comprehensive brief in support of his motion for further discovery, setting forth his arguments before the trial judge, and because he argued portions of the brief and was allowed to proffer the substance of what he hoped to introduce, we find no error in the trial court's ruling.

IV.

## CONCLUSION

Based upon the foregoing, we affirm the judgment of the trial court in all respects. Costs are assessed to the plaintiff-appellant, Gregory R. Aymond.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-1248

GREGORY R. AYMOND

VERSUS

RICH DUPREE

COOKS, J., dissents.

Gregory R. Aymond was the attorney for the Rapides Parish Waterworks District Number 3. In his capacity, as commission attorney, he investigated the misuse of public funds by Mayor Roy Hebron. At the conclusion of his investigation, Mr. Aymond submitted a report to the Water Board and, as a result, the Water Board turned the matter over to the district attorney, the ethics board and the legislative auditor. Rich Dupree is a member of the Water Board and allegedly a friend of Mayor Hebron. Shortly thereafter, Mr. Aymond's employment contract was not renewed by the water commission. Mr. Aymond alleges Mr. Dupree made false statements about him and attempted to injure his reputation in the community as a result of his investigation and report concerning the mayor. He filed a defamation and slander suit against Mr. Dupree. Additionally, Mr. Aymond alleges Mr. Dupree influenced two crucial votes, causing him to lose his employment with the commission. Mr. Dupree filed a Motion to Strike pursuant to La.Code Civ. P. art. 971, which provides, in relevant part:

> A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

1

The trial court dismissed Mr. Aymond's petition and the majority opinion affirms, citing this court's decision in *Darden v. Smith*, 03-1144 (La.App. 3 Cir. 6/30/04), 879 So.2d 390.

I respectfully disagree with the opinion dismissing Mr. Aymond's suit using Article 971. I submit the proper procedural vehicle to test the validity of this claim is a motion for summary judgment, not a motion to strike under Article 971. I do not think Article 971 was intended to be used to prevent plaintiffs, such as Mr. Aymond, from filing a suit for defamation. Defamation laws place limits on an individual's right of free speech. The basis for Mr. Aymond's claim is Mr. Dupree engaged in prohibited speech which damaged his reputation in the community. Mr. Aymond is clearly entitled to assert a claim for the injuries he allegedly suffered. If we apply the reasoning of the majority opinion, no defamation suit will ever survive and a plaintiff will be condemned to pay attorney's fees for attempting to petition for redress of a grievance.

Article 971 was intended to dispose of lawsuits filed in *retribution* against individuals asserting their right to petition the court for redress of grievances or against individuals speaking out publicly regarding a "public issue." It was meant to protect individuals, such as Mr. Aymond, who, as attorney for the commission, was hired to investigate and submit a report on a matter involving the use of public funds. It was not meant to protect public bodies or public figures from lawsuits filed by individual citizens, even though those lawsuits may ultimately be dismissed on a motion for summary judgment. The threshold inquiry under this provision is whether the matter is within the realm of a "public issue." Clearly, the alleged defamatory remarks by Mr. Dupree were meant to discredit Mr. Aymond, *personally*, for exercising *his* responsibility as attorney for the commission to speak out on a public

2

matter. Therefore, I would find Article 971 inapplicable to the present situation and require Mr. Dupree to seek dismissal by way of a summary judgment.

*Darden v. Smith*, cited by the majority, does not support a dismissal based on Article 971 in this case, in fact, just the opposite. In *Darden*, Mr. Smith *filed a federal law suit* against the Concordia Parish Police Jury and its members alleging racial discrimination in the issuance of housing permits. Ms. Darden was a member of the Police Jury and was offended by allegation of racial discrimination. Mr. Smith also filed a complaint against Ms. Darden with the Ethics Board alleging a conflict of interest. When the federal court suit was dismissed and the ethics complaint was resolved, Ms. Darden filed a defamation suit against Mr. Smith. Mr. Smith filed a Motion to Strike pursuant to Article 971. This court examined Ms. Darden's petition and found her cause of action was based on statements made in the federal law suit which "arise from acts in furtherance of the defendant's right of free speech and in connection with a public issue." Moreover, in *Darden,* this court awarded attorney's fees as mandated under the act. Although the facts in *Darden* warranted the application of Article 971, because of the mandatory attorney's fees provision, I had reservations concerning the effect Article 971 might have on a plaintiff's right to petition the court and filed a concurring opinion, stating:

> By mandating the award of attorney's fees to a prevailing defendant, in every case, as the majority has done, we risk penalizing individuals for asserting their constitutional right to petition the court for redress of an alleged grievance. Although Ms. Darden did not present enough evidence to sustain her cause of action, she had every right to defend her character and reputation against a perceived attack. She had a reasonable belief in the rightness of her cause evidenced by the fact that both the federal petition and the ethics complaint were resolved in her favor. I would find the award of attorney's fees a discretionary matter based on the individual facts of the case and, in this case, I would have declined an award. . . . To mandate attorney's fees as a penalty in every case would chill a plaintiff's right to petition the court. If, in the alternative, La.Code Civ. P. art. 971 does mandate an award of attorney's fees in every case to a prevailing defendant, I would

3

have used the motion for summary judgment to decide this case.

*Darden v. Smith*, 879 So.2d at 400-401. (Cooks, J., dissenting.)

The factual situation presented in *Darden* is not analogous to that in the present case and the result reached in the majority opinion will have the effect of chilling the right of individuals to speak out publicly concerning a public issue or petition the court for redress of an alleged grievance without fear of retribution. Mr. Aymond was the attorney for the commission. It was Mr. Aymond's responsibility and it was he who investigated the alleged wrongdoing by a public official. The defamatory and slanderous comments in this case, were made in response to Mr. Aymond's protected conduct in investigating the alleged wrongdoing and exposing the matter to the commission. Mr. Aymond must be free to speak out against wrongdoing, which injures the public, without fear of reprisal from public officials whose interests should be synonymous with those of the public which Mr. Aymond seeks to protect. In this case, Mr. Aymond's reputation in the community was allegedly damaged, and now, according to the majority opinion, he is hindered from seeking redress. The commission members should not have "public interest" in suppressing the speech of Mr. Aymond, made in connection with a public issue, and done within his authority as attorney for the commission. In this case, to allow this commission member to use a motion to strike under Article 971 would result in the following: first, it would thwart the efforts of any attorney or individual to publicly disclose alleged wrongdoing by public figures and would subject the attorney or individual to being defamed by the public figures who are the subjects of the investigation; and, second, it would severely undermine Mr. Aymond's constitutional right to petition for redress of a grievance and to exercise his free speech in matters involving the public interest. Mr. Aymond does have a probability of success on his claim. Mr Aymond is alleging

4

he was defamed and that it was done maliciously and directly connected with his investigation of wrongdoing by the public official. The trial court did not allow him an opportunity to present any evidence to support his claim, which evidence would be admissible in response to a motion for summary judgment and relevant to the element of malicious intent. The commission member does not have a free speech right to defame Mr. Aymond when Mr. Aymond was exercising *his* free speech right to speak on a public issue involving a public official. To say, in this case, that a member of a public body can shield itself, by use of the present motion to strike, means that no defamation suits would ever stand when a public official or public body defames an individual for speaking out against the public body.

Stately differently, in this case, if Mr. Aymond had been sued by a public official for defamation, it is Mr. Aymond who had the right to use Article 971, as it was intended, to protect him for speaking out on a public issue stemming from his investigation and recommendations in connection with a public matter. For the foregoing reasons, I respectfully dissent from the majority opinion.