DONALD BRITTON,
v.
CHARLES (CHUCK) HUSTMYRE, LOUISIANA BUSINESS INCORPORATED, ROLFE McCOLLISTER, JR., MIKE ECKSTEIN, JULIO MELARA, 225BATON ROUGE, 225BATON ROUGE.COM.
No. 2009 CA 0847.
Court of Appeals of Louisiana, First Circuit.
March 26, 2010.
Not Designated for Publication.
DONALD BRITTON, Baker, LA, Plaintiff/Appellant, Pro Se.
A. JUSTIN OURSO III, CHRISTOPHER D. MARTIN, Baton Rouge, LA, Counsel for Defendants/Appellees, Louisiana Business Incorporated, Charles Hustmyre, Rolfe McCollister, Jr., Mike Eckstein, and Julio Melara.
Before: WHIPPLE, HUGHES, and WELCH, JJ.
HUGHES, J.
This is an appeal from a trial court judgment granting the defendants' LSA-C.C.P. art 971 special motion to strike and dismissing the action in defamation. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
In a July 2008 edition of 225 Magazine, an article written by "Chuck Hustmyre" was published that purported to expose matters involving the Louisiana Department of Health and Hospitals ("DHH") and nonprofit counseling organizations associated with Donald Britton. On August 15, 2008 the instant suit was filed by Mr. Britton alleging the article contained "lies, rumor and gossip" about him.[1] In his petition, Mr. Britton characterized the 225 Magazine article about him as retaliatory, for his failure to yield to author Charles (Chuck) Hustmyre's July 2009 "demands" for the disclosure of financial records related to the Community Resource Services organization, of which he was President/Executive Director. Mr. Britton alleged that Mr. Hustmyre maliciously caused lies to be published about him "for the purpose of causing financial, economic and social damages." The other named defendants were alleged to have provided the "vehicle" and/or assisted Mr. Hustmyre "in spreading lies, rumor and gossip for the purpose of defaming, slandering and ruining [his] reputation and [his] career."
In response to this suit, the defendants filed a special motion to strike, based on the authority of LSA-C.C.P. art 971, asserting that Mr. Britton was unable to establish a "probability of success" as required by Article 971, and therefore his suit should be dismissed. Following a hearing on the motion, held by the trial court on January 5, 2009, judgment was rendered (and later signed on March 2, 2009) in favor of the defendants, dismissing the action and ordering Mr. Britton to pay court costs and $2,500.00 in attorney fees to the defendants.
On January 8, 2009 Mr. Britton filed a motion for rehearing and to set aside the judgment, which also sought recusal of the presiding judge. A February 18, 2009 hearing on Mr. Britton's motion to recuse the presiding judge was held before another judge of the trial court, and the motion was denied.
On February 25, 2009 Mr. Britton filed an appeal, which was subsequently dismissed by this appellate court as abandoned.[2] See Britton v. Hustmyre, XXXX-XXXX (La. App. 1 Cir. 6/8/09) (unpublished).
Thereafter, on March 2, 2009, judgment was rendered and signed, denying Mr. Britton's motion for rehearing and to set aside the January 5, 2009 judgment. In the March 2, 2009 judgment, the presiding judge stated that Mr. Britton had failed to set forth any basis in law or in fact that would warrant a rehearing or new trial within the authority of LSA-C.C.P. arts. 1972 or 1973.
On March 11, 2009 the defendants filed a motion for new trial "limited to the amount of the defendants' attorneys' fees awarded pursuant to its successful special motion to strike under Article 971." Also on that date, Mr. Britton filed the subject suspensive appeal as to the trial court judgment rendered on January 5, 2009 and signed on March 2, 2009.
In conjunction with his appeal, Mr. Britton has filed with this appellate court a "Motion to Included [sic] Exhibits] Denied in District [Court,]" seeking to be permitted to submit exhibits and evidence relevant to the case, which he contends were not accepted into evidence by the trial court. In his motion, Mr. Britton alleges:
1. The presiding 19th [Jjudicial [District [J]udge denied plaintiff his right to admit evidence in this case that would reveal the truth about the illegal activities of the defendants.
2. The copy of the judgment, order, minute entry, oral reason for judgment and transcripts will not reveal all truth about the injustice of the court.
3. The interest of justice in this case [sic] plaintiff should be allowed to enter exhibits.
Defendants have filed with this court a "Motion to Dismiss Appeal or, Alternatively, Motion to Suspend Briefing Deadlines Pending Consolidation of Appeals." In this motion, the defendants assert that at the time Mr. Britton filed his appeal (March 11, 2009) the trial court had not ruled on the defendants' motion for new trial (also filed March 11, 2009). Defendants further assert that the trial court signed a judgment on May 26, 2009 granting the defendants' motion for new trial "thereby vacating its March 2, 2009 judgment." Defendants argue that pursuant to LSA-C.C.P. art. 2123(C), the prematurity of Mr. Britton's appeal was never cured as the judgment appealed was vacated. Defendants seek dismissal of this appeal and, in the alternative, a suspension of briefing delays until this appeal can be consolidated with a subsequent appeal filed by Mr. Britton.[3] See Britton v. Hustmyre, XXXX-XXXX (La. App. 1 Cir. 3/26/10) (unpublished).
Additionally, this court, ex proprio motu, issued an order on June 11, 2009 directing the parties to show cause why the appeal should not be dismissed as premature, citing the absence of a ruling in the record by the trial court on the defendants' motion for new trial. All of the appellate motions have been referred to this panel for disposition.
As to the merits of the appeal, Mr. Britton presents the following assignments of error:
1. A rational trier of fact could not conclude that [LSA-C.C.P. art. 971] has any relevance in this case since it refers to public and political figures[,] which the appellant is neither.
2. [LSA-C.C.P. art. 971] was not intended to be a vehicle whereby any media can spread falsity, lies and defamation about citizens of the State of Louisiana with immunity from due process of law and law suits [sic].
3. Plaintifff's] rights [sic] to due process of law dictates [sic] that on a new trial or rehearing both part[ies] should have the right to enter evidence, witnesses and be treated fairly.
4. The defendants] should not be awarded any attorney fees[.]
5. The defendants] being awarded a judgment against appellant for attorney fees of $17[,]000.00 after being awarded $2[,]500.00 in a final judgment which was on appeal. [Sic]
6. The presiding judge presented himself as bias[ed] and prejudice[d] toward pro se litigant. He has attempted to obstruct justice, conspire with defendants, extort money, harass, intimidate, threaten and disrespect plaintiff.
7. The presiding judge should have recused himself when his conduct became questionable.

LAW AND ANALYSIS

Motion/Rule Relating to Prematurity of Appeal
An appellate court has the duty to examine the basis of its jurisdiction. See Monterrey Center, LLC v. Ed.ucation Partners, Inc., XXXX-XXXX, p. 5 (La. App. 1 Cir. 12/23/08), 5 So.3d 225, 228-29 (quoting McGehee v. City/Parish of East Baton Rouge, XXXX-XXXX, p. 3 (La. App. 1 Cir. 9/12/01), 809 So.2d 258, 260). A final judgment is appealable in all causes in which appeals are given by law. Id. at p. 229; LSA-C.C.P. art. 2083. A judgment that determines the merits in whole or in part is a final judgment. Id.; LSA-C.C.P. art. 1841. An order of appeal is premature if granted before the court disposes of all timely filed motions for new trial or judgment notwithstanding the verdict. The order becomes effective upon the denial of such motions. LSA-C.C.P. art. 2123(C). Courts of this state have held that a trial court's denial of a motion for new trial during the pendency of an appeal cures the defect of prematurity. See Guillory v. Hebert, 2007-614, p. 4 (La. App. 5 Cir. 12/27/07), 975 So.2d 58, 60; Sullivan v. Franicevich, XXXX-XXXX, p. 2 (La. App. 4 Cir. 3/9/05), 899 So.2d 602, 604, writs denied, XXXX-XXXX, XXXX-XXXX (La. 5/20/05), 902 So.2d 1051, 1055 (citing Oliver v. Oliver, 411 So.2d 596, 597-98 (La. App. 1 Cir. 1982)). Cf Overmier v. Traylor,475 So.2d 1094, 1094-95 (La. 1985).
In the instant case, Mr. Britton's appeal was prematurely taken prior to the disposition by the trial court of the defendants' motion for new trial; however, the defendants' motion was subsequently ruled on during the pendency of this appeal. Following a May 4, 2009 hearing on the motion for new trial, the trial court granted the motion in part, vacating the March 2, 2009 judgment "only with respect to the amount of attorneys' fees awarded." Judgment was then rendered on the attorney fee issue in favor of the defendants and against Mr. Britton, ordering him to pay defendants "$17,723.00 in reasonable attorneys' fees, plus $450.00 for the court costs of defendants." The trial court further ordered that "the rest of the March 2, 2009, judgment remains in effect and unchanged by this final judgment." The judgment was signed on May 27, 2009.[4]
With respect to that portion of the March 2, 2009 judgment dismissing Mr. Britton's action on the basis of LSA-C.C.P. art. 971, we deem the instant appeal effective, as the motion for new trial was denied as to that portion of the judgment. See LSA-C.C.P. art. 2123(C). However, with respect to that portion of the March 2, 2009 judgment that was vacated, i.e., the award of attorney fees, this appeal was premature, having been taken prior to the rendition and signing of the final judgment. Accordingly, we will maintain this appeal in part, with respect to the trial court's LSA-C.C.P. art. 971 dismissal, and dismiss the appeal, in part, with respect to the award of attorney fees.[5]

Motion to Supplement Record
Next we address Mr. Britton's motion, filed with this court, requesting that he be allowed to introduce evidence into the record on appeal. As an appellate court, we have no jurisdiction to receive new evidence. An appellate court must render its judgment upon the record on appeal in accordance with LSA-C.C.P. art. 2164. The record on appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcripts, jury instructions, judgments and other rulings, and evidence filed, unless otherwise designated, as stated in LSA-C.C.P. arts. 2127 and 2128, Official Revision Comment (d) for LSA-C.C.P. art. 2127, and Rules of Court  Courts of Appeal, Rule 2-1.7. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence; therefore, the motion to introduce additional evidence must be and hereby is denied. See Hudson v. East Baton Rouge Parish School Board, XXXX-XXXX, p. 2 (La. App. 1 Cir. 3/28/03), 844 So.2d 282, 284-285; Lewis v. Jabbar, XXXX-XXXX, p. 6 (La. App. 1 Cir. 1/12/09), 5 So.3d 250, 255; Nickens v. Patriot Home Systems, 97-0291, p. 3 (La. App. 1 Cir. 2/20/98), 708 So.2d 1184,1186.

Code of Civil Procedure Article 971 Special Motion to Strike
In his first and second assignments of error, Mr. Britton contends that LSA-C.C.P. art. 971 is not applicable to this case since, he asserts, he is not a public or political figure. Further, Mr. Britton argues that LSA-C.C.P. art. 971 was not intended to be used to allow the media to defame Louisiana citizens with immunity from suit, implicitly asserting the trial court erred in granting the Article 971 special motion to strike.
In enacting Article 971 by 1999 La. Acts, No. 734, the Louisiana Legislature stated its purpose:
The legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, it is the intention of the legislature that the Article enacted pursuant to this Act shall be construed broadly.
The granting of a special motion to strike pursuant to Article 971 presents a question of law. Appellate review regarding questions of law is simply a review of whether the trial court was legally correct or legally incorrect. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and render judgment on the record. Lamz v. Wells, XXXX-XXXX, p. 3 (La. App. 1 Cir. 6/9/06), 938 So.2d 792, 795.
Louisiana Code of Civil Procedure Article 971 provides as follows, in pertinent part:
A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
(3) If the court determines that the plaintiff has established a probability of success on the claim, that determination shall be admissible in evidence at any later stage of the proceeding.
* * *
F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:
(1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:
* * *
(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.
* * *
The meaning of LSA-C.C.P. art. 971, as it relates to the instant case, is clear. In Paragraph A of Article 971, the Louisiana Legislature designated the type of action the article is applicable to, i.e., an action arising out of a person's exercise of his right of petition or free speech in connection with a public issue. (In the instant case, the "persons" who have exercised their right of free speech are the defendants.) Article 971 goes on to state, in Paragraph A, that if a person is sued based on an act relating to his right of petition or free speech, then a special motion to strike is available to that person. (Again, in this case, the "persons" who acted on their right of free speech, by publishing the magazine article at issue herein, are the defendants.)
Further, the applicability of Article 971 depends on whether a defendant in a defamation case, was exercising his right of free speech in connection with a public issue, when the plaintiff was allegedly defamed. This requirement is satisfied, as stated in Article 971, Paragraph (F)(1)(c), when the allegedly defamatory statements are made publically and "in connection with an issue of public interest." (This means that the defendants in this case must have made the allegedly defamatory statements "in connection with an issue of public interest.")
Thus, the plaintiffs status, or lack thereof, as a public figure is irrelevant to the application of Article 971. Rather, it is the defendants' speech that must be made in connection with a public issue, which triggers the applicability of Article 971. Therefore, Mr. Britton's assertion that LSC.C.P. art. 971 is not applicable to this case since he is not a public or political figure is without merit.
This court's review of the 225 Magazine article at issue in this case reveals that the subject of the article was related to an issue of public interest. The article was clearly intended as an expose of the government dispersal of public funds via grants and/or contracts to providers who, in the author's (Mr. Hustmyre's) opinion, lack the proper qualifications to provide the services at issue, as well as the government's failure to adequately screen such providers. It cannot be denied that the public has a right to be informed about how its tax dollars are being spent. Therefore, the subject of the instant action is clearly a matter of public interest, which is subject to the provisions of LSA-C.C.P. art. 971.
Mr. Britton also contends on appeal that the Article 971 special motion to strike was improperly granted in this case. Pursuant to Article 971, the special motion to strike authorized therein should be granted only when a plaintiff is unable to establish "a probability of success on the claim." Thus the plaintiff in a defamation action, subject to Article 971, must demonstrate to the trial judge, by means of his pleadings and/or affidavits filed (as directed by Paragraph (A)(2) of Article 971), that it is probable that he can successfully prove defamation.
In order to prove defamation, a plaintiff must establish five elements: (1) defamatory words; (2) unprivileged publication; (3) falsity; (4) malice (actual or implied); and (5) injury. Aymond v. Dupree. XXXX-XXXX, p. 9 (La. App. 3 Cir. 4/12/06), 928 So.2d 721, 728, writ denied, XXXX-XXXX (La. 10/6/06), 938 So.2d 85. If even one of these required elements is lacking, the cause of action fails. Thinkstream, Inc. v. Rubin, XXXX-XXXX, p. 10 (La. App. 1 Cir. 9/26/07), 971 So.2d 1092, 1101, writ denied, 2007-2113 (La. 1/7/08), 973 So.2d 730.
Our review of the record leads us to conclude that Mr. Britton has failed to demonstrate that he has a probability of establishing the falsity of the statements complained of in this case. At the time of the ruling by the trial court on the Article 971 motion, Mr. Britton had filed no affidavits into the record. In his pleadings, Mr. Britton specified only the following statements in the 225 Magazine article as being falsehoods: (1) that he received $200,000 from the DHH and a couple of six figure grants; (2) that he was charged with stealing from a non-profit organization; (3) that he proposed to provide services for the Baker School System when he did not have funding in place to perform the services offered; and (4) that he billed the State for services he did not provide.[6]
In support of their special motion to strike, the defendants filed the affidavit of Mr. Hustmyre, with documentary attachments, attesting to the following:
1. He is a freelance author and reporter and investigated, researched, and wrote the text of a news article that bore the headline "Contract to steal" that Louisiana Business, Inc., published in the August 2008 print issue of the its [225 Magazine] and which appeared in the magazine's on-line edition on July 29, 2008 (the "News Article"), a copy of which article is attached to this affidavit as Exhibit 1.
2. He has personal knowledge of the facts stated in this affidavit by virtue of his having investigated, researched, and written the News Article and by virtue of his participation in the events described in this affidavit.
3. He gives this affidavit in connection with a motion to strike pursuant to Article 971 of the Louisiana Code of Civil Procedure.
4. He is an experienced investigator, having worked as a criminal investigator for the East Baton Rouge Parish District Attorney's office from March 1988 until December 1990 and having worked as a special agent for the Bureau of Alcohol, Tobacco, and Firearms of the United States Department of the Treasury for almost thirteen years from January 1991 until he took a disability retirement in October 2003 due to an on-thejob injury.
5. He has been a full-time writer since then, including numerous assignments as a freelance reporter for the last five years for the Baton Rouge Advocate, the cable network Court TV, and other publications, and he is the author of two nationally published true crime books, Killer With a Badge and An Act of Kindness.

6. He was covering a Baker School Board meeting for the Advocate on or near April 15, 2008, when Donald Britton, who is a subject of the News Article, made a presentation that piqued his interest.
7. He began investigating Britton's background and his relationships with two agencies of the State of Louisiana that award contracts to private parties.
8. He investigated the record in State of Louisiana v. Donald Britton, No. 07-04-0401, Nineteenth Judicial District Court for the State of Louisiana, including an arrest warrant with a supporting affidavit, a bill of information, and minute entries from the criminal case, certified copies from the record of which are attached at Exhibit 2.
9. The statements in the News Article concerning the criminal prosecution of Britton, including the statements "...was on probation at the time for stealing money from another government program;" "Britton was charged with stealing $3,000 of government money from one of the residents;" and "Shortly after being charged with stealing from one nonprofit..." were all based upon information in Exhibit 2.
10. The attached Exhibit 3 is a certified copy of the articles of incorporation of Mai son Des Ami of Louisiana, Inc.
11. His investigation disclosed that Britton was hired in December 2005 to serve as the Executive Director of a clinic operated by the Good Shepherd Resource and Substance Abuse Center (the "Center") and that he served as the Executive Director of the clinic until January 16, 2007.
12. The attached Exhibit 4 is a copy of a compliance report that he obtained from the Louisiana Department of Health and Hospitals entitled "Report on Compliance with Laws and Regulations Based on a Limited Review of Financial Statements and Financial Records for Good Shepherd Resource and Substance Abuse Center."
13. The attached Exhibit 5 is a copy of a schedule, timeline, and memorandum notes that the Louisiana Department of Health and Hospitals furnished him in response to inquiries that he made concerning the Center, which shows the reimbursement payments made to the Center during the period from April 2006 through April 2008.
14. He added the amounts of the payments for the period April 2006 through December 2006, during which Britton was the Executive Director of the Center's clinic, and the notation "total $199,419" on Exhibit 5 is his handwriting reflecting the sum of the payments received by the clinic during this period.
15. The statement in the News Article that "The year before-from April to December 2006the Department of Health and Hospitals handed Britton $200,000 to run an adult drug and alcohol counseling service..." was based upon the information in Exhibits 4 and 5.
16. The attached Exhibit 6 is a certified copy of the articles of incorporation and annual reports of Community Resource Services, a nonprofit corporation for which Britton was an incorporator and of which Britton has been the president and a director since its formation in 2005.
17. The attached Exhibit 7 is a copy of a financial statement of Community Resource Services for the year ending December 31, 2007, that he obtained from the Louisiana Legislative Auditor.
18. The statement in the News Article that "What Britton didn't mention during his presentation to the Baker School Board was that he did not have the funding in place to pay for the services he was offering" was based upon the information in Exhibit 7.
19. He had not known or heard of Britton prior to being present during Britton's presentation to the Baker School Board on or near April 15, 2008.
20. He knows Britton only from meeting Britton in connection with his investigation, research, and writing of the News Article and does not know Britton personally.
21. He has no ill feelings toward Britton.
A court in a defamation case must consider the entirety of a statement in determining whether the statement is actionable, as well as the context in which it was made, and the effect it is reasonably intended to produce in the mind of the average listener. See Sassone v. Elder, 626 So.2d 345, 352 (La. 1993); Kosmitis v. Bailey, 28,585, p. 3 (La. App. 2 Cir. 12/20/96), 685 So.2d 1177, 1180. See also Taylor v. Town of Arcadia, 519 So.2d 303, 306 (La. App. 2 Cir.), writ denied, 522 So.2d 1097 (La. 1988). After a thorough review of the record presented on appeal, this court concludes that, when the statements complained of are read in the context of the magazine article as a whole, and considering the effect the article as a whole would have on the average reader, Mr. Britton's probability of proving falsity has not been established.
The Hustmyre article begins the first paragraph by stating, "Rev. Donald Britton might be the last person to whom you'd expect the state of Louisiana to hand a couple of six-figure government grants."[7] Mr. Britton argues that this statement is untrue because he, personally, has never been given any government grants. However, after a reading of the entire magazine article, it becomes clear that what Mr. Hustmyre intends to convey to the reader is that government funds have been placed in the hands of Mr. Britton in his capacity as the director of the various organizations under government contract. The article clearly states that as the director of Community Resource Services, Mr. Britton received the $100,000 government contract. Similarly, in the beginning of the Hustmyre article it is stated that DHH "handed" Mr. Britton "$200,000" to run an alcohol counseling service, but it is clear from later statements in the article that Mr. Britton received the funds in an administrative capacity for the non-profit corporation established by the Good Shepherd Baptist Church. It is obvious to an average reader that a corporation or any other entity can only receive funds through its executive officers and/or other employees. We further note that these two contracts could reasonably be referred to as a "couple" of "six-figure" grants.
Mr. Britton further declares as false the Hustmyre article's representation that he has stolen from a non-profit organization as stated in the article. Beneath the photograph of Mr. Britton at the beginning of the article, it is stated:
Rev. Donald Britton, in this 2004 East Baton Rouge Parish booking photo, was convicted of stealing $3,000 from Maison Des Ami of Louisiana, a federally-funded shelter for chronically mentally ill homeless. The money was meant to help one of the center's clients. Although Britton was convicted, he insists it should have remained a simple civil matter and that he was persecuted because of his race.
Further clarification of the referenced incident is given in the opening sentence of the article where it is stated that the felony conviction for theft was of funds "from a client at a government-funded homeless shelter." Additional details are given later in the article:
In June 2004, just five months into his tenure as executive director of Maison Des Ami of Louisiana on Convention Street, a federally-funded nonprofit shelter for homeless adults with chronic mental problems, Britton was charged with stealing $3,000 of government money from one of the residents.
The certified criminal records upon which Mr. Hustmyre based these statements were annexed to his affidavit, which was filed into the trial court record. The June 3, 2004 sworn affidavit of Maison Des Ami employee Harvey Johnson, upon which the arrest warrant was based, stated in pertinent part:
The affiant states that the accused was employed as the Executive Director of the business of Maison Des Ami ... since January 5th, 2004. Maison Des Ami is a boarding care facility for the mentally ill and homeless in which the United States Treasury pays rent for certain residents. Each resident receives a check in different amounts monthly. The rent at Maison Des Ami varies for each resident. Part of the accusedf's] job is to take all the checks, cash them and then give each resident what is left from his or her check after the rent is paid. This money is then placed into a name file and recorded in a registry. The money is to be dispersed to the desi[g]nated resident as needed.
On March 8th, 2004, the accused was given a check in the amount of $4,207.00 by the affiant. $3,900.00 of the money was for Danny L. Trask, a resident of Maison Des Ami's money and the remainder was for other residents. $425.00 of the $3,900.00 was designated for rent to Maison Des Ami which leaves a refund of $3,475.00 to Danny Trask.
On March 12th, 2004 the accused gave Vada Elliot, the social worker who oversees the refunds, $465 of the $3,475.00. The accused told Vada Elliot that he would keep the remainder of the cash, $3,010.00[,] in his office.
On April 18th, 2004, the accused was asked by the affiant where the remainder of Danny L. Trask[`s] refund was. The accused told the affiant that he had the money in a safe place. The affiant then asked a second time where was the refund. The accused then told the affiant that he had taken the money to his personal safe deposit box at Liberty Bank....
* * *
The bill of information, filed by the district attorney on July 26, 2004, charged Mr. Britton with felony theft and stated that "on or about March 9, 2004 the defendant committed theft of U.S. Currency belonging to Danny Trask...." The minutes of the criminal court reflect that Mr. Britton was found guilty as charged by a jury on March 2, 2005. The criminal court minutes also reflect that as a special condition of probation, Mr. Britton was ordered to "pay restitution in the amount of $3,320.00 to Maison Des Ami." These criminal court documents validate the statements made in the Hustmyre article. Mr. Britton failed to timely submit proof to the contrary in the trial court.
As to the Hustmyre article's assertion that when, on or about April 15, 2008, Mr. Britton proposed to provide services for the Baker School System, he did not have funding in place to perform the services offered, again, Mr. Britton failed to submit proof to the contrary in the trial court in a timely manner. The Hustmyre affidavit provided to the trial court attached a prior financial statement of the Community Resource Services, dated December 31, 2007, which showed the Britton-run organization had total assets of $5,371.00 and total liabilities of $21,034.00, with a net deficit for 2007 of $15,663.00. The Hustmyre article logically assumed, based on the 2007 Community Resource Services financial statement, that the organization was insolvent. Mr. Britton failed to prove this conclusion was false.
The final assertion contained in the Hustmyre article, which Mr. Britton's pleadings point to as false, was that Mr. Britton had billed the State for services that were not provided. In support of that contention, Mr. Hustmyre, in his trial court affidavit, stated that he relied on a compliance report obtained from the DHH, entitled "Report on Compliance with Laws and Regulations Based on a Limited Review of Financial Statement and Financial Records for Good Shepherd Resource and Substance Abuse Center ["Good Shepherd"]." The copy of the report attached to the Hustmyre affidavit contained a DHH schedule, timeline, and memorandum notes that Mr. Hustmyre attested were furnished to him in response to inquiries that he made concerning the Good Shepherd for the period of April 2006 through April 2008, during which time Mr. Britton was running the program. The DHH report stated that, through its Office for Addictive Disorders, it administered the Access to Recovery ("ATR") program. DHH further stated that the ATR program was designed to provide substance abuse patients with a free choice of providers and services of recovery and support, and allowed selection of "faith and community based caregivers." DHH stated that it had contracted with Good Shepherd to perform such services on a "fee for service" basis. The DHH report was generated following a limited-in-scope review to determine if fee-for-service billings by Good Shepherd were consistent with applicable regulations. The report noted the following "exceptions:" (1) employees were being treated as contract workers and no payroll taxes were being deducted from wages; (2) a review of randomly selected clients revealed that DHH/ATR was billed for two clients whose files could not be located (it was recommended that DHH/ATR be reimbursed $785.00 for these clients); and (3) a review of transportation service records revealed these services were not properly documented and out of 571 transportation services, only eleven were documented (undocumented transportation services billed, amounting to $17,391.00, were recommended for reimbursement to DHH/ATR).
The DHH Activity report for Good Shepherd further listed ATR payments to Good Shepherd totaling $199,419.00 for the period of April 2006 through December 2006. During this time period, Mr. Britton was running the program for Good Shepherd and presumably received these funds from DHH/ATR on behalf of Good Shepherd. Further, the fact that Good Shepherd was required to reimburse DHH/ATR for monies received for which it could not document that services had been provided could lead to the assumption that said services were not provided. We conclude that the Hustmyre article's statements based on these DHH documents had a basis in fact. Mr. Britton filed no proof to the contrary into the trial court record.
Having concluded that Mr. Britton has shown no probability that he can succeed in proving the falsity of the Hustmyre statements, Mr. Britton failed to bear his burden of proof under LSA-C.C.P. art 971. Thus, we find no error in the trial court's dismissal of this defamation action under Article 971.

Refusal of the Trial Court to Allow Introduction of Mr. Britton's Evidence
The hearing on the defendants' LSA-C.C.P. art. 971 special motion to strike was held in the trial court on January 5, 2009. Mr. Britton was present in court. Prior to the date of the hearing, other than his pleadings, Mr. Britton submitted no affidavits or other evidence into the record. During the January 5, 2009 hearing, both counsel for defendants and Mr. Britton presented oral argument to the trial court. During the course of Mr. Britton's argument, he admitted that he was "charged" with felony theft, but asserted that it was "more a civil matter than a criminal matter." During the remaining portion of Mr. Britton's argument before the trial court, he pointed to no "pleadings" or "supporting and opposing affidavits" to support his allegations, as required by Article 971. Mr. Britton's argument to the trial court consisted only of his oral and conclusory assertions of the falsity of the statements in the Hustmyre article.
We note that at one point in his oral argument, Mr. Britton asserted that one of Hustmyre's sources, Will McDaniel, "never told Chuck Hustmyre that lie." The trial judge then asked Mr. Britton, "How do you know that he didn't say that to Mr. Hustmyre?" Mr. Britton replied, "Because he told me he didn't." The court then asked, "And where is the proof of that? I'm simply going to take your word on that? Where is the affidavit from that individual saying, I never made those statements that were printed in that article?" Mr. Britton stated, "Well, I'm sure Mr. Chuck Hustmyre has it since he wrote it. I'm sure he has an affidavit to that effect." The court further stated, "You're the one that's saying that the person, the gentleman, Mr. McDaniel, didn't say it and he told you he didn't say it. Where is the affidavit from Mr. McDaniel supporting that position?" Mr. Britton responded, "There is no affidavit from Mr. McDaniel. I would like to see Mr. Chuck Hustmyre's affidavit that he used when he wrote this article saying it. He's the one who defamed my character."
This interchange between Mr. Britton and the trial court illustrates the nature of the problem with Mr. Britton's case. The trial court is required by law to decide the LSA-C.C.P. art. 971 motion on the basis of "the pleadings[8] and supporting and opposing affidavits." The law requires Mr. Britton, as the plaintiff, to establish "a probability of success" on his claim of defamation, yet Mr. Britton did not file the necessary documents with the trial court to satisfy his burden of proof. At no time during the January 5, 2009 hearing did Mr. Britton seek to introduce the documents of proof required by LSA-C.C.P. art. 971, nor did he request that the court allow him any additional time to do so. At the conclusion of the hearing, the trial judge ruled as follows, in pertinent part:
The basis of the article in question was public records that were relied upon by the reporter.... A review of these exhibits ... clearly rebuts any presumption of falsity. Therefore, ... even giving the plaintiff the presumption of falsity, that presumption has been rebutted. The burden then shifts to plaintiff to prove likelihood of success, and the plaintiff has offered nothing whatsoever to address that burden [of proof] or to show any likelihood of success other than argument today and basically rereading to the Court the allegations in his petition.
...[B]ased on plaintiffs failure to meet the burden of proving the probability of success on his defamation claim ... the Court is going to grant the special motion to strike and dismiss plaintiffs claim, with prejudice, at plaintiffs costs.
It was not until the subsequent May 4, 2009 hearing on the defendants' limited motion for new trial (as to the amount of attorney fees) that Mr. Britton attempted to present evidence to support his claim of defamation.[9] During that May 4, 2009 hearing, Mr. Britton attempted to call witnesses to the stand who he had subpoenaed to testify on his behalf. The trial court asked Mr. Britton why the witnesses were being called to testify and Mr. Britton stated, "To get the facts of the case and to show that there are reasons for a new trial and to submit evidence into the record." The court then stated, "I denied [your] motion for new trial. The only thing we're hearing today is the question of the amount of attorney's fees...." Mr. Britton was not allowed to submit the testimony of his witnesses as it related to the previously heard and decided LSA-C.C.P. art. 971 special motion to strike. The hearing was limited only to the defendants' motion for a limited new trial on the issue of attorney fees.
Mr. Britton contends on appeal that he should have been allowed to introduce the testimony of the witnesses called to attend the May 4, 2009 hearing. We disagree.
The trial court rendered judgment on the merits of the LSA-C.C.P. art. 971 special motion to strike following the hearing on that motion on January 5, 2009. The final judgment was signed by the court on March 2, 2009, dismissing Mr. Britton's case. Mr. Britton's motion for new trial of the matter was denied by the trial court.
We note that Mr. Britton's previously filed (on January 8, 2009) motion for new trial (denied by the trial court on March 2, 2009) failed to state that he had any new evidence to present to the trial court, which would satisfy the requisite grounds for a new trial found in LSA-C.C.P. art. 1972: "A new trial shall be granted, upon contradictory motion of any party, in the following cases: .. .When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial." To the extent, Mr. Britton's appeal attempts to assign error to the trial court's denial of his motion for new trial, we find no error in the ruling.
Mr. Britton filed the instant appeal of that January 5, 2009 judgment on February 25, 2009. After the appeal of the January 5, 2009 judgment was taken, the trial court was without jurisdiction to alter the judgment, as dictated by LSA-C.C.P. art. 2088(A), which provides in pertinent part: "The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal...."
Mr. Britton's proof to prevent his case from being dismissed under LSA-C.C.P, art. 971 should have been submitted prior to the court's ruling at the January 5, 2009 hearing. His attempts to introduce evidence on that issue, after the judgment dismissing his case had been signed by the trial court and after he had filed his appeal of that judgment, came too late.
By choosing to represent himself, a litigant assumes the responsibility of familiarizing himself with applicable procedural and substantive law. He assumes all responsibility for his own inadequacy and lack of knowledge of procedural and substantive law. His failure to comply with applicable procedural and substantive law does not give him any greater rights than a litigant represented by an attorney. See Harrison v. McNeese State University, 93-288, p. 3 (La. App. 3 Cir. 3/23/94), 635 So.2d 318, 320, writ denied. 94-1047 (La. 6/17/94), 638 So.2d 1099; Devffle v. Watch Tower Bible and Tract Society, Inc., 503 So.2d 705, 706 (La. App. 3 Cir. 1987). See also Hudson v. East Baton Rouge Parish School Board, XXXX-XXXX, p. 3 n.2 (La. App. 1 Cir. 3/28/03), 844 So.2d 282, 285 n.2. Cf. Hutchinson v. Westport Insurance Corporation, XXXX-XXXX (La. 11/8/04), 886 So.2d 438.
We find no error in the trial court's refusal to allow introduction of evidence by Mr. Britton on May 4, 2009, which was required to have been submitted by January 5, 2009.

Recusal of Trial Court Judge
Although Mr. Britton's appellate brief presents arguments and assertions relating to the denial of his motion to recuse the presiding trial court judge, he stated during the February 26, 2010 appellate oral argument that he did not intend to appeal the denial of is motion to recuse. Thus, this appeal presents nothing further for our review.[10]

CONCLUSION
For the reasons assigned, we deny the defendants' motion to suspend the briefing schedule, we deny the plaintiffs motion to supplement the record, and we grant the defendants' motion to dismiss this appeal, in part, and deny the motion to dismiss, in part. We further affirm the judgments of the trial court, which: dismissed the plaintiffs suit with prejudice, denied plaintiffs motion for new trial, and denied the plaintiffs motion to recuse. All costs of this appeal are to be borne by Donald Britton.
MOTION TO SUSPEND BRIEFING SCHEDULE DENIED; MOTION TO SUPPLEMENT RECORD DENIED; MOTION TO DISMISS APPEAL GRANTED IN PART AND DENIED IN PART; JUDGMENTS AFFIRMED.
NOTES
[1] Mr. Britton is not an attorney, but he is representing himself in this litigation.
[2] Although Mr. Britton stated, during the appellate oral argument of this case on February 25, 2010, that he had not filed three appeals in the underlying trial court suit, the trial court record contains three separate motions for appeal, filed, respectively, on February 25, 2009, March 11, 2009, and May 18, 2009. The motion for appeal, filed on February 25, 2009, was granted by the trial court on February 27, 2009, and the record was lodged with this court on March 27, 2009. However, Mr. Britton filed no appellate brief, and the appeal was dismissed as abandoned by order of this court dated June 8, 2009. We note that the motion for appeal, filed February 25, 2009, did not specify which trial court judgment was being appealed and, at that time, the trial court had rendered two judgments: one on January 5, 2009 (granting the defendants' special motion to strike), which had not yet been signed by the court; and another judgment rendered on February 18, 2009 (denying the plaintiffs motion to recuse), which was signed on February 25, 2009. In light of Mr. Britton's February 25, 2010 statements to this court, it is apparent that his March 11, 2009 motion for appeal was intended as a revision of the February 25,2009 motion for appeal, so as to clearly indicate his intent to appeal the January 5, 2009 judgment.
[3] Since the defendants nevertheless timely filed an appellate brief in this appeal, we deem that portion of the defendants' motion seek suspension of briefing delays to be moot.
[4] Although a copy of this judgment does not appear in the record of this appeal, it appears in the record submitted to this court in connection with Mr. Britton's subsequently filed appeal, also taken from the same lower court proceeding. See Britton v. Hustmyre, XXXX-XXXX.
[5] We note that Mr. Britton will, nevertheless, receive review of the attorney fees issue via his subsequently filed appeal, Britton v. Hustmyre, XXXX-XXXX.
[6] These specifications were culled from Mr. Britton's petition and his opposition to the special motion to strike. However, we note that the latter was not technically a "pleading," though captioned as a "motion," as the substance of that filing did not meet the criteria as stated in LSC.C.P. arts. 852 and 961. See also Alcorn v. City of Baton Rouge ex rel. Baton Rouge Police Department, 2003-2682, p. 3 (La. 1/16/04), 863 So.2d 517, 519.
[7] Although the Hustmyre article does not appear in its entirety in the record of the instant appeal (XXXX-XXXX), due to an apparent irregularity in the copying of the record, the article does appear in the record submitted to this court in connection with Mr. Britton's subsequently filed appeal, also taken from the same lower court proceeding. See Britton v. Hustmyre, XXXX-XXXX
[8] The pleadings allowed in civil actions, whether in a principal or incidental action, shall be in writing and shall consist of petitions, exceptions, written motions, and answers." LSA-C.C.P. art. 852.
[9] Although a copy of the transcript of this hearing does not appear in the record of this appeal (XXXX-XXXX), it appears in the record submitted to this court in connection with Mr. Britton's subsequently filed appeal, also taken from the same lower court proceeding. See Britton v. Hustmyre, XXXX-XXXX.
[10] We note that the hearing on the motion to recuse, held before Judge Janice Clark on February 18, 2009, was not transcribed and the arguments before the trial court do not appear in the record on appeal. However, the signed judgment of the trial court states: "After considering the motion, the failure of the plaintiff Britton to offer any evidence at the hearing, the argument presented by Mr. Britton, the statements by counsel for the defendants, the record, and the law, ... the plaintiff Britton's motion to recuse is denied."